UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN JONES,

        Plaintiff,                Case No. 2:10-cv-12114
                                    District Judge Arthur J. Tarnow
v.                                  Magistrate Judge Anthony P. Patti

PATRICIA BARNHART, *et
al.*,

        Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT PATRICIA BARNHART'S MOTION FOR SUMMARY JUDGMENT (DE 140)[1] AND TO DENY PLAINTIFF JOHN JONES' MOTION FOR SUMMARY JUDGMENT (DE 141)

I.    **RECOMMENDATION**:  The Court should grant the motion for summary

judgment filed by Patricia Barnhart, and dismiss Plaintiff's case in its entirety on

the bases of failure to exhaust administrative remedies and qualified immunity.

II.    **REPORT**

    **A.**    **Background**

        **1.**    **Procedural Background**

    The Court set out the relevant procedural history in this action in its April

26, 2017 Order.  (DE 169.)  The April 26, 2017 order is adopted by reference.  In

---

[1] Defendant Barnhart filed her motion for summary judgment on February 13, 2017 (DE 140) and her exhibits on February 16, 2017 (DE 144), the latter of which is accepted despite its slight tardiness.

Defendant Barnhart's instant motion, she moves for summary judgment on the bases of qualified immunity, limitation of actions, and failure to exhaust administrative remedies.  In Plaintiff's motion, he asserts that he is entitled to judgment on the merits on his Eighth Amendment claims.

Plaintiff breaks his causes of action into two categories. First, he argues that Defendant interfered with his ability to receive medical treatment for a serious medical need.  Second, he argues that Defendant Barnhart interfered with his right to exercise, asserting that he used a special, handicapped gym every day prior to the elevator breaking down in his unit.  However, Plaintiff does not mention this latter claim in his amended complaint and asserts it for the first time in his motion for summary judgment. In his actual pleadings, he instead asserts that Defendants violated his constitutional rights by "denying him access to needed medical and dental services, and by denying him assistance to exit the building in case of a fire [or] during a fire drill."  (DE 59 at 7.)  As such, I will not consider Plaintiff's exercise-related argument.  *See Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 958, 970 (6th Cir. 2007) (affirming the district court disregarding claims raised for the first time in a motion for summary judgment); *Priddy v. Edelman*, 883 F. 2d 438, 446 (6th Cir. 1989) ("A party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal

theories . . .").  Plaintiff is "the master of his complaint," and thus, the Court looks to the pleadings to define his claims. *Roddy v. Grand Trunk W. R.R., Inc.*, 395 F.3d 318, 322 (6th Cir. 2005). Moreover, although Plaintiff was *in pro per* when the complaint and amended complaint were filed, he did not move for leave to further amend his pleadings after counsel was appointed.

I will address each of the parties' arguments relating to Plaintiff's Eighth Amendment medical needs claim in turn.

## 2.    Factual Background

Plaintiff filed his initial complaint in this action on May 26, 2010 and his amended complaint on August 22, 2013.  (DE 1 and 59.)  In his amended complaint, he named as Defendants Patricia Barnhart and Paula Mass and brought claims under 42 U.S.C. § 1983, alleging that Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution and under the Americans with Disabilities Act ("ADA") when they confined him to his unit for 60 days with no access to medical care.

Plaintiff is a parapalegic who has been confined to a wheelchair since 1984. (DE 142-3 at 2.)  He was therefore limited to being housed either in Auburn B unit or the Cord A unit of the Thumb Correctional Facility ("TCF"), which were both elevator accessible.  During the relevant events in 2009, he was housed at Auburn B and Defendant Barnhart was TCF's Deputy Warden.  (DE 142-2 at 2.)  The

elevator in Auburn B broke down the week of August 17, 2009, when Plaintiff was undergoing treatment for a urinary tract infection ("UTI"). Plaintiff had experienced UTIs in the past, which generally required follow-up appointments for labs after ten days of antibiotics. (DE 142-3 at 19.)

The healthcare office was located in a different building and required inmates to either take stairs or the elevator out of Auburn to access. (DE 142-3 at 8.) As a result, after Plaintiff finished his initial dose of antibiotics to treat the UTI, he was unable to make his follow-up health care appointments while the elevator was broken. According to Plaintiff, Officer Gooch told him he was "not allowed to go to health care per RUM Wilson and . . . Acting Warden Barnhart." (DE 142-3 at 18.) He missed at least two health care call outs while confined to Auburn B. (Id. at 21.) At oral argument, Plaintiff's counsel explained that his UTI treatment included the administration of antibiotics and that the follow-up to his UTI treatment entailed urine sampling; however, he was unable to explain why either of these required a call out, as opposed to a cell visit by a health-care worker.

Defendant Barnhart relied on her staff to "carry out the day-to-day functioning" of TCF and did not have access to individual prisoner medical information. (DE 144-1 at ¶¶ 6-7.) Plaintiff spoke with Defendant Barnhart personally "the first week, maybe the beginning of the second week of October"

4

about his inability to access health care because of the broken elevator. (DE 142-3 at 13.) Soon thereafter, on October 16, 2009, he was moved out of Auburn and into a unit which had a functioning elevator. (Id.)

**B.    Standard**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat

the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir.

2011) ("The nonmovant must, however, do more than simply show that there is

some metaphysical doubt as to the material facts . . . .  [T]here must be evidence

upon which a reasonable jury could return a verdict in favor of the non-moving

party to create a genuine dispute.") (internal quotation marks and citations

omitted). Summary judgment is appropriate when "a motion for summary

judgment is properly made and supported and the nonmoving party fails to respond

with a showing sufficient to establish an essential element of its case. . . ."

*Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23

(1986)).

### C.    Discussion

#### 1.    Statute of Limitations

State statutes of limitations apply to determine the timely filing of claims

asserted under 42 U.S.C. § 1983. *McCormick v. Miami Univ.*, 693 F.3d 654, 662

(6th Cir. 2012). A three-year statute of limitations for personal injury claims

outlined in Mich. Comp. Laws § 600.5805(1) governs § 1983 actions where the

cause of action arises in Michigan. *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir.

1986); *see also Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004) (noting that the three-year statute of limitations outlined in § 600.5805(1) is "borrowed for § 1983 claims."). Specifically, "the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F3d 211, 220 (6th Cir. 1996).

Here, the events described in Plaintiff's complaint occurred in 2009 and his Step III grievances were resolved on April 19, 2010. Plaintiff filed his initial complaint in this lawsuit on May 26, 2010, naming Barnhart as a defendant. (DE 1.) He filed an application to proceed *in forma pauperis* on June 14, 2010, which the Court granted on June 17, 2010. (DE 5-6.) One day later, the U.S Marshal Service acknowledged its receipt of the service of process documents. (DE 8.)

On December 14, 2010, Plaintiff filed a motion for default judgment, asserting that Defendants were served on June 18, 2010 and that Defendant Barnhart had not yet responded. (DE 24.) Magistrate Judge Komives denied the motion on March 23, 2011, noting that Defendant Barnhart had not yet been served and ordering Assistant Attorney Scott Rothermel, who appeared on behalf of the other Defendants, to furnish the U.S. Marshal Service with the correct address for Barnhart. (DE 27.) On November 8, 2012, Magistrate Judge Komives issued an order that Plaintiff provide the Court with Defendant Barnhart's correct address.

(DE 51.)  Plaintiff timely filed a response providing Barnhart's last known address, along with the information that she was a warden at the Maine Correctional Facility.  (DE 52.)

Plaintiff filed a motion for leave to amend his complaint, *also* naming Barnhart as a Defendant, on April 30, 2013, which the Court granted on August 22, 2013, essentially deeming his proposed amended complaint (DE 56) to be the new operative pleading.  (DE 58-59.)  Defendant Barnhart's waiver of service was returned executed on November 26, 2013 and she filed her first motion for summary judgment on December 3, 2014.  (DE 63.)

Barnhart now argues that Plaintiff's claims against her are barred by the three-year statute of limitations because he failed to serve her within the allowed time period.  More specifically, Defendant argues that, "Although tolling is permitted only for 120 days from the date of filing the grievance, even if tolling is permitted until the date of the step-III responses, the plaintiff had only until April 19, 2013, to serve Barnhart. He missed the deadline by half a year." (DE 140 at 8.) Plaintiff counters that it was the responsibility of the U.S. Marshal Service to effect service over Defendant Barnhart.  Specifically, Plaintiff points to the Sixth Circuit's opinion in *Byrd v. Stone*, 94 F.3d 217 (6th Cir. 1996), which explains that, while it is generally the responsibility of the plaintiff to serve a copy of his or her summons and complaint upon the defendant, "where a plaintiff is authorized to

proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915," "the court must appoint a United States Marshal to serve plaintiff's process." *Id.* The plaintiff is "thereby reliev[ed] . . . of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint." *Id.* (citing *Graham v. Satkoski*, 51 F. 3d 710, 712 (7th Cir. 1995)).

In *Byrd*, the court held that the plaintiff had good cause for not serving the defendant within the required timeframe because he had provided the court with the name and address of the defendant and believed the Marshal Service was taking care of service of his summons. *Id.* at 220. However, where a plaintiff "remain[s] silent after being put on notice" that certain defendants had not been served, this "supercedes any neglect on behalf" of the U.S. Marshal Service and the Court. *VanDiver v. Martin*, 304 F. Supp. 2d 934, 941-42 (E.D. Mich. 2004).

Here, Plaintiff did not "sit by in silence when he knew service had not been executed." *VanDiver*, 304 F. Supp. 2d at 943. Instead, as evidenced by his motion for default judgment, he mistakenly believed that all Defendants had been properly served. As a result of Plaintiff's motion, the Court ordered Attorney Rothermel to provide Defendant Barnhart's address, and the docket does not reflect that Attorney Rothermel did so. Nevertheless, at this point Plaintiff was under the impression that Defendant Barnhart's address was being provided to the Court in order to allow the U.S. Marshal to serve her. Two years later, when this had still

not been done, the Court ordered Plaintiff to provide a correct address for Defendant Barnhart. Plaintiff timely responded with all of the information to which he had access. As such, Plaintiff had good cause for failing to effect service over Defendant Barnhart within the three year statute of limitations. Importantly, Defendant Barnhart does not argue that she was prejudiced or unaware of the lawsuit in any way. It would not serve the interests of justice to penalize Plaintiff for timely filing his lawsuit, using the limited tools at his disposal to attempt to aid the U.S. Marshals in serving Defendant Barnhart, and exercising diligence with Court orders. Accordingly, I conclude that Plaintiff's claims are not barred by the statute of limitations and recommend that Defendant Barnhart's motion for summary judgment not be granted on this basis.

### 2. Exhaustion

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of

§ 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 219 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 US at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .").

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. As such, Defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

Defendant Barnhart asserts that Plaintiff failed to exhaust his administrative remedies as to her because he never provided her name in his Step 1 grievances. To support this proposition, she provides an affidavit in which she attests that Plaintiff filed two grievances in this matter: the first on October 21, 2009 and the second on November 3, 2009, both after Plaintiff had been moved to Cord B. (DE 144-1 at ¶¶ 9 and 12.) Plaintiff does not name Defendant Barnhart in either of those grievances. (Id. at Pg. ID 1533 and 1540.) The first time Defendant Barnhart's name appears is in the grievance *response* dated December 8, 2009, which was authored by Todd Durnan. (Id. at Pg. ID 1541.)

To be sure, "exhaustion is not per se inadequate [under the PLRA] simply because an individual later sued was not named in the grievances." *Okoro v. Hemingway*, 481 F. 3d 873, 874 (6th Cir. 2007). "However, if such a requirement is written into the prison's administrative procedures, compliance is mandatory if a defendant is to be considered exhausted." *Washington v. Hutchinson*, No. 08-12787, 2009 WL 2923162, at *4 (E.D. Mich. Sept. 10, 2009). Defendant cites to

current Michigan Department of Corrections ("MDOC") policy stating that the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included" at Step 1. MDOC Policy Directive 03.02.130, ¶ R, http://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf (last visited May 2, 2017) (DE 140 at 10.)

Plaintiff does not dispute in his response that he failed to name Defendant Barnhart in his grievances or that he was required to do so in 2010, when this lawsuit was initiated. Instead, he argues, once again, that Defendant Barnhart waived the affirmative defense by failing to file an answer. I have already rejected this argument in my April 26, 2017 order denying Plaintiff's motion to strike the answer. (DE 169.) Accordingly, I recommend that Defendant Barnhart's motion be granted and Plaintiff's motion be denied on this basis. In the alternative, Defendant Barnhart is entitled to qualified immunity, as addressed below.[2]

_____

[2] This case has been pending for seven years. The Attorney General has passed the case between lawyers within his office, one of whom admittedly did not read this Court's orders regarding the preservation of evidence (which, per DE 168, will result in a spoliation instruction, should this case be tried). Why the Attorney General waited all these years to finally bring a dispositive motion on such threshold issues as the statute of limitations, exhaustion of remedies and qualified immunity is anyone's guess. Needless to say—and with due deference to Winston Churchill—it has not been the Attorney General's "finest hour," or even its "finest seven years."

### 3. Qualified Immunity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Phillips v. Roane Cnty.,* 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The Court conducts a two-step analysis in assessing qualified immunity. First, the Court determines whether "the violation of a constitutional right has occurred" and second, whether the "constitutional right at issue was clearly established at the time of defendant's alleged misconduct." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009). During the analysis, the Court must view the facts in the light most favorable to the plaintiff. *Id.* The Sixth Circuit recently laid out the Court's analysis of qualified immunity as follows:

> To deny qualified immunity, the court need not conclude that the inferences drawn by the Plaintiff are the only reasonable inferences that could be drawn, but must simply find that the inferences drawn are reasonable and not blatantly contradicted.

*Harris v. Lasseigne*, 602 F. App'x 218, 222 (6th Cir. 2015). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Moldowan v. City of Warren,* 578 F.3d 351, 375 (6th Cir. 2009).

Here, Plaintiff brings his claims under the Eighth Amendment, asserting that Defendant was "deliberately indifferent to his medical and dental needs . . . ." (DE 59 at 5.) "The deliberate indifference to serious medical needs of prisoners—e.g., the failure to respond to medical needs, intentional denial or delay of medical care, or intentional interference with a prescribed treatment—constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (citing *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976)). The Court applies a two-prong test with objective and subjective components to assess claims of deliberate indifference to serious medical needs of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the plaintiff must show that the deprivation alleged is "objectively, 'sufficiently serious.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the plaintiff must show that the prison official committing the act did so with a "'sufficiently culpable state of mind.'" *Id.* (citing *Wilson*, 501 U.S. at 302-03). The United States Court of Appeals for the Sixth Circuit applies the test as follows:

> First, we determine whether the plaintiff had a sufficiently serious medical need under the objective prong. A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. Second, we determine whether the defendant had a sufficiently culpable state of mind in denying medical care under the subjective prong.

*Burgess*, 735 F. 3d at 476 (internal citations and quotations omitted).

To succeed on the subjective prong, a plaintiff must show "more than mere negligence, but something less than specific intent to harm or knowledge that harm will result. . . ." *Id.* (citing *Farmer*, 511 U.S. at 835). Specifically, the conduct must "demonstrate deliberateness tantamount to an intent to punish." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). However, "a prisoner is not required to show that he [or she] was literally ignored by the staff to prove an Eighth Amendment violation, only that his [or her] serious medical needs were consciously disregarded." *Rouster v. Cnty. of Saginaw*, 749 F. 3d 437, 448 (6th Cir. 2014). Put another way,

> [a] government doctor has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs; instead, the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm.

*LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001).

Here, Defendant contends that Plaintiff cannot meet the objective prong because he has not put any verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment. Plaintiff counters that there is no need for verifying medical evidence where the medical need was obvious.[3]

"'[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to

---

[3] Plaintiff again asserts that Defendant Barnhart waived the defense because she failed to answer. As addressed above, I have already dealt with this issue in my April 26, 2017 order denying Plaintiff's motion to strike. (DE 169.)

establish the detrimental effect of the delay in medical treatment to succeed.'"
*Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F. 3d 1176, 1188 (11th Cir. 1999)). However, the requirement to place verifying medical evidence in the record "does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore v. Kalamazoo Cty.*, 390 F. 3d 890, 898 (6th Cir. 2004). Plaintiff concedes that he has not placed any verifying medical evidence in the record, but argues that his repeated complaints about his UTI and the fact that P.A. Mass ordered follow-up treatment is sufficient to make the need obvious to a lay person. Plaintiff's situation does seem more analogous to that of *Blackmore* than *Napier*. The plaintiff in *Napier* did not complain about missing treatment, indicated that missing his treatment was "no big deal," and did not seek immediate medical attention after his release. *Napier*, 238 F.3d at 741. In contrast, the *Blackmore* plaintiff complained of "sharp" and "severe" pain for a period of days and required his placement in an observation cell. *Blackmore*, 390 F. 3d at 899. Here, construing the facts in the light most favorable to Plaintiff, an argument could be made that he complained about his condition. (*See, e.g.*, DE 142-10 at ¶ 6.) . A reasonable jury could conclude that his need for medical attention was obvious and required prompt attention by competent health care providers.

However, this is not fatal to Defendant's qualified immunity argument: Plaintiff cannot establish the subjective prong of the test because his claim against Defendant Barnhart is based on supervisory liability. In analyzing a case under § 1983, "each defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). "*Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Instead, liability under § 1983 "'must be based on more than . . . the right to control employees.'" *Comstock v. McCrary*, 273 F.3d 693, 712-713 (6th Cir. 2002) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Specifically, the United States Court of Appeals for the Sixth Circuit has addressed the requirements for supervisory liability to attach under § 1983 as follows:

> [A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official *at least implicitly authorized, approved, or knowingly acquiesced* in the unconstitutional conduct of the offending officers."

*Shehee*, 199 F.3d at 300 (quoting *Hays v. Jefferson Cnty., Ky.,* 688 F.2d 869, 874 (6th Cir. 1982) (emphasis added)).

Plaintiff has not come forward with evidence that Defendant Barnhart herself knew of his serious medical need and ignored it. Instead, Plaintiff testified in his deposition that he initially spoke to Defendant Barnhart about his symptoms

and inability to access healthcare in his current unit during the "first week, maybe the beginning of the second week of October," and was moved out of the unit on October 16th.  (DE 140 at 30, p. 42 at ¶¶ 8-11.)  Plaintiff reiterates that Defendant Barnhart became aware of his complaints "either the beginning or the second week of October."  (Id. at 32, p. 52 at ¶¶ 24-25.)  According to Plaintiff's testimony, therefore, Defendant Barnhart took action to remedy his complaints within a few days of learning about them firsthand.  Further, Defendant Barnhart provides an affidavit in which she avers that she relied on her staff to handle the day-to-day functioning of the prison and did not have access to prisoner medical records.  (DE 144-1 at ¶¶ 6-7.)  Plaintiff's own testimony reveals that he was moved to a unit with a functioning elevator shortly after discussing the matter directly with Defendant Barnhart.  As such, Plaintiff cannot establish the first prong of the test for qualified immunity, that the violation of a constitutional right, namely, an Eighth Amendment violation, has occurred.  In other words, Plaintiff is unable to show that the Deputy Warden "implicitly authorized, approved or knowingly acquiesced" in the constitutional violation.  *Shehee*, 199 F. 3d at 300 (internal citation omitted).[4]  Accordingly, I conclude that Defendant Barnhart is entitled to

---

[4] In his deposition, Plaintiff testified that Officer Gooch told him that he "was not allowed to go to health care per RUM Wilson and . . . Acting Warden Barnhart." (DE 142-3 at 18, Pg. ID. 1425.)  In fact, Officer Gooch indicated in his "Response to Request for Written Deposition" that he did tell Plaintiff that he "could not go to his health care call-outs" because Barnhart told him that Plaintiff "could not leave

qualified immunity and recommend that the Court grant Defendant Barnhart's motion and deny Plaintiff's motion.

### 4. Americans with Disabilities Act

Plaintiff concedes that his claim under the Americans with Disabilities Act should be dismissed. (DE 161 at 2.)

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

---

the unit until the elevator was either replaced or repaired." (DE 142-12 at ¶ 1.) However, when asked whether Barnhart was in fact "*aware* that Plaintiff Jones had these [sic] health care call-outs[,]" Gooch's response also states that, "I am *not aware* of what information Warden Barnhart and RUM Wilson was [sic] aware of." (Id. at ¶ 2) (emphasis added). More importantly, these responses were not sworn, notarized or given under the penalty of perjury (excepting use of the word *affiant*), and Gooch himself *later testified under oath* that the earlier, unsworn statement was "inaccurate as written" because he "was not sure who put [] out" the standing order that wheelchair-bound inmates should be confined to the lower level. (DE 142-4 at 3.) Further, Plaintiff's *own account* of what a non-party, lower-level MDOC employee told him is hearsay, because it is an out-of-court statement offered to prove the truth of the matter asserted, namely, that Defendant Barnhart made the order that he be confined to the lower level in Auburn. Fed. R. Evid. 801(c). Finally, even if the statement were properly admitted, nothing in the statement actually indicates that Defendant Barnhart was aware of and disregarded Plaintiff's known medical needs.

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: May 11, 2017                           s/Anthony P. Patti                      
                                              Anthony P. Patti
                                              UNITED STATES MAGISTRATE JUDGE

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 11, 2017.

s/Marlena Williams
In the absence of Michael Williams
Case Manager